**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TANISHA DAVIS,                )<br>                                              )<br>         Plaintiff,               )<br>                                              )     Case No.  1:18cv6570<br>v.                                         )<br>                                              )     Honorable Sharon Johnson Coleman<br>HICKORY FARMS,           )     Magistrate Young B. Kim<br>                                              )<br>         Defendant.           )     JURY TRIAL DEMANDED | |

### AMENDED COMPLAINT AT LAW

COMES NOW Plaintiff, TANISHA DAVIS, by her attorney, and complaining of the Defendant, HICKORY FARMS, states as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, as amended.

2. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1988.

3. Venue is proper in this District and Division because the unlawful employment actions alleged herein were committed within the Eastern District of Illinois.

### PARTIES

4. Hickory Farms is a foreign LLC organized in the State of Delaware, with its principal place of business located at 311 S. Wacker Drive, Suite 2030, Chicago, Illinois.

5. Hickory Farms is a leading food gifting retailer with operations in the United States and Canada.

6. At all times relevant to this litigation, Tanisha Davis ("Davis") was an African-American female resident of Joliet, Illinois.

7. At the time of the unlawful employment practices alleged herein, Defendant Hickory Farms was and continues to be an employer within the meaning of the statutes pursuant to which this action is brought.

## ADMINISTRATIVE PROCEDURAL HISTORY

8. Plaintiff timely filed a charge of Discrimination against Defendant with the EEOC (Charge No. 440-2018-03814). On June 26, 2018, the EEOC issued a Right-to-Sue notice which was received by Plaintiff on June 29, 2018 (attached hereto as Exhibit A). This lawsuit was filed within ninety (90) days of Plaintiff's receipt of that Notice of Right to Sue.

## FACTS

9. Plaintiff Davis spent several years working in professional environments handling administrative, financial, marketing and legal matters, prior to working at Hickory Farms.

10. She began work at Hickory Farms in October, 2017, in a seasonal role as a Corporate Sales Coordinator, and was very enthusiastic about her new career opportunity.

11. In her initial role, Davis reported to Mary Lou Sarmiento, Corporate Sales Manager.

12. Shortly after joining the Corporate Sales department, Davis was given several directives by Ms. Sarmiento which seemed counter to a cooperative work environment. These included, but were not limited to:

    a. directing Davis not to talk to other departments because Sarmiento believed "they didn't know anything."

    b. directing Davis not to talk to Ty because Sarmiento believed "he doesn't know anything about the sales department"

      c. directing Davis not to talk to Lisa because "she is a lesbian and has a wife who also works for Hickory Farms and that she knows too much about the business and no one person should have that much power in a company."

13. Davis was deeply troubled by these unprofessional characterizations and directives from her supervisor, Sarmiento.

14. Davis undertook the duties and responsibilities of her position seriously and performed to the employer's legitimate expectations.

15. Several months into her employment, Davis' position was converted from seasonal to full-time permanent.

16. As Davis began to understand the landscape of Hickory Farms and how she was to interact with corporate clients and other departments, Sarmiento started directing Davis to perform work that was Sarmiento's responsibility.

17. Davis experienced several clients who expressed disappointment and anger towards Sarmiento because Sarmiento was nonresponsive and didn't complete customer's orders.

18. Customers informed Davis that they no longer wanted Sarmiento handling their accounts.

19. Sarmiento asked Davis to take over Sarmiento's marketing responsibilities and promised Davis that if she did her work, she would support Davis' efforts to gain a position in the marketing department.

20. Consistent with her position, Davis attended various corporate events, ribbon cuttings, and the like, which were approved activities.

21. Sarmiento rebuked Davis for engaging in normal corporate activities, and chided Davis for wanting to learn more about corporate sales training.

22. Sarmiento told Davis she was "going to deep" and didn't need to know more information about the company's sales activities.

23. It was clear to Davis that Sarmiento did not have Davis' best interests at heart and sought to prevent Davis from excelling in the company.

24. Sarmiento continued to malign and degrade Davis with rude comments, trying to make her feel stupid, and creating a hostile work environment.

25. In group meetings, other participants had to tell Sarmiento to stop her verbal attacks against Davis when Davis offered suggestions and recommendations for improvement.

26. Davis learned after the fact that she had been systematically excluded from meetings and events in which she should have participated.

27. During a meeting Sarmiento raised the issue of black people on the south side of Chicago stating "Trump just needs to send in his troops and kill them all."

28. In disbelief, Davis responded "there are innocent children and people of my race living in those areas," to which Sarmiento reiterated "he just needs to go in there and kill them all."

29. Davis complained to Nick Jager, Corporate Sales Administrator, about Sarmiento's conduct and the hostile work environment she created.

30. Jager said that he would take Davis' complaints to Human Resources.

31. Later, when Davis asked about the status of her complaints, Jager ignored her.

32. Thereafter, Jager joined Davis in creating a hostile work environment for Davis.

33. Jager cursed at Davis, threw papers across a meeting table at Davis, slammed his hands on a table in a threatening manner and yelled at Davis.

34. On another occasion Jager went on a tirade bashing, degrading and disrespecting Davis, during which Davis got up and left the discussion, stating that she was no longer going to tolerate being treated in such a hostile manner.

35. White employees were not subjected to this hostile work environment as Davis.

36. Immediately thereafter Davis called Todd Grohnke, Vice President of B2B Sales, to report Jager and Sarmiento's outrageous conduct.

37. Mr. Grohnke directed Davis to write down what occurred and to take it to Gina Flaig, Human Resources Manager.

38. Davis contacted Flaig and scheduled a meeting for June 27, 2018.

39. When Davis began to describe Sarmiento's and Jager's discriminatory conduct, Flaig stated that she "didn't want to hear a long dragged out story" and to "give her a quick short version."

40. Then, as Davis started to explain, Flaig abruptly interrupted her and stated "this is all about you. Today is your last day. You don't fit in here. Turn in your badge. Go pack your belongings. Leave and do not return and turn in a letter of resignation."

41. Davis asked for an explanation of why she was being terminated, with no response.

42. Davis was terminated on June 27, 2018, in retaliation for her complaints of discrimination at Hickory Farms.

43. Hickory Farms, by and through its agents, acted with a callous and reckless disregard for Davis' protected rights under the law.

**COUNT I – TITLE VII RACE DISCRIMINATION**

44. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 43 in this Count as if fully stated herein.

45. Defendant subjected Plaintiff to discrimination in the terms and conditions or her employment on the basis of her race (Black), treating her less favorably than similarly-situated non-Black employees.

46. Defendant's conduct was unwelcome.

47. Defendant created a hostile work environment for Plaintiff due to her race, which was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile.

48. At the time the conduct occurred, Plaintiff perceived her work environment to be hostile due to Defendant's conduct.

49. The effect of Defendant's above-stated actions denied Plaintiff equal employment opportunities, income in the form of wages, prospective retirement benefits, Social Security and other benefits due solely to her race.

50. Plaintiff has suffered and will continue to suffer irreparable injury from the Defendant's actions, policies and practices as set forth in this Complaint.

51. Plaintiff has suffered and will continue to suffer emotional and mental anguish and damage to her reputation as a result of Defendant's actions.

52. Defendant failed to take prompt remedial action despite actual and constructive notice of the unlawful actions taken against Plaintiff by her immediate supervisor.

53. Defendant acted with malice and reckless disregard to plaintiff's civil rights.

WHEREFORE, Plaintiff prays that this Honorable Court:

A. enter judgment for the Plaintiff and against the Defendant on the basis of Defendant's willful violations of Title VII of the Civil Rights Act;

B. award Plaintiff actual damages, including back pay, and all other sums of money, including retirement benefits and other employment benefits;

C. award Plaintiff compensatory damages including, but not limited to, inconvenience, humiliation, emotional distress, and pain and suffering;

D. award plaintiff punitive damages, as well as pre-and post-judgment interest;

E. issue an order directing Defendant to reinstate Plaintiff with full seniority and back pay plus interest thereon, pension rights and other benefits, or in the alternative, front pay;

F. award Plaintiff the costs of this lawsuit, including reasonable attorney's fees, expert witness fees and such other further and relief as this Court deems equitable and just.

### COUNT II – 42 U.S.C. § 1981

54. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 53 in this Count as if fully stated herein.

55. Defendant subjected Plaintiff to discrimination in the terms and conditions or her employment on the basis of her race (Black), treating her less favorably than similarly-situated non-Black employees.

56. Defendant's conduct was unwelcome.

57. Defendant created a hostile work environment for Plaintiff due to her race, which was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile.

58. At the time the conduct occurred, Plaintiff perceived her work environment to be hostile due to Defendant's conduct.

59. The effect of Defendant's above-stated actions denied Plaintiff equal employment opportunities, income in the form of wages, prospective retirement benefits, Social Security and other benefits due solely to her race.

60. Plaintiff has suffered and will continue to suffer irreparable injury from the Defendant's actions, policies and practices as set forth in this Complaint.

61. Plaintiff has suffered and will continue to suffer emotional and mental anguish and damage to her reputation as a result of Defendant's actions.

62. Defendant failed to take prompt remedial action despite actual and constructive notice of the unlawful actions taken against Plaintiff by her immediate supervisor.

63. Defendant acted with malice and reckless disregard to plaintiff's civil rights.

WHEREFORE, Plaintiff prays that this Honorable Court:

A. enter judgment for the Plaintiff and against the Defendant on the basis of Defendant's willful violations of 42 U.S.C. § 1981, as amended;

B. award Plaintiff actual damages, including back pay, and all other sums of money, including retirement benefits and other employment benefits;

C. award Plaintiff compensatory damages including, but not limited to, inconvenience, humiliation, emotional distress, and pain and suffering;

D. award plaintiff punitive damages, as well as pre-and post-judgment interest;

E. issue an order directing Defendant to reinstate Plaintiff with full seniority and back pay plus interest thereon, pension rights and other benefits, or in the alternative, front pay;

F. award Plaintiff the costs of this lawsuit, including reasonable attorney's fees, expert witness fees and such other further and relief as this Court deems equitable and just.

**COUNT III – TITLE VII AND 42 U.S.C § 1981 – RETALIATION**

64. Plaintiff incorporates by this reference the allegations stated in paragraphs 1 through 63 in this Count as if fully stated herein.

65. Plaintiff's complaints of discrimination were based on a reasonable, good faith belief that she was treated less favorably than similarly situated nonblack employees and subjected to a hostile work environment, based on her race.

66. Plaintiff was terminated by Defendant.

67. A causal connection exists between plaintiff's complaints of discrimination and her termination.

68. Defendant would not have terminated Plaintiff if she had not complained about her disparate treatment and the hostile work environment.

WHEREFORE, Plaintiff prays that this Honorable Court:

A. enter judgment for the Plaintiff and against the Defendant on the basis of Defendant's willful violations of Title VII of the Civil Rights Act and 42 U.S.C. § 1981, as amended;

B. award Plaintiff actual damages, including back pay, and all other sums of money, including retirement benefits and other employment benefits;

C. award Plaintiff compensatory damages including, but not limited to, inconvenience, humiliation, emotional distress, and pain and suffering;

D. award plaintiff punitive damages, as well as pre-and post-judgment interest;

E. issue an order directing Defendant to reinstate Plaintiff with full seniority and back pay plus interest thereon, pension rights and other benefits, or in the alternative, front pay;

F. award Plaintiff the costs of this lawsuit, including reasonable attorney's fees, expert witness fees and such other further and relief as this Court deems equitable and just.

Dated: January 16, 2019

                                          Respectfully submitted,

                                          TANISHA DAVIS

                                          By:   /s/ Andre E. Townsel, #6227189
                                                        TOWNSEL LAW FIRM
                                                        1701 E. Woodfield Road, Suite 900
                                                        Schaumburg, IL 60173
                                                        Tel: (312) 772-5850
                                                        Fax: (312) 278-0070
                                                        ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 16th day of January, 2019, a true and accurate copy of the forgoing Amended Complaint at Law was filed electronically via CM/ECF, United States District Court for the Northern District of Illinois, to be served on all registered counsel of record.

                                                        /s/ Andre E. Townsel

EEOC Form 161 (11/16)            **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Tanisha Davis<br>1507 Bates Rd.<br>Joliet, IL 60433 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-03814 | Jacquelyn Harrison, Investigator | (312) 869-8140 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____       6/26/18
Julianne Bowman,                         (Date Mailed)
District Director

Enclosures(s)

cc:  **Chief Executive Officer**
     **HICKORY FARMS**
     311 S. Wacker Dr.
     Suite 2030
     Chicago, IL 60606

Exhibit A