## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TANISHA C. DAVIS, | |
| Plaintiff, | |
| | Case No. 18-cv-06570 |
| v. | |
| | Judge Mary M. Rowland |
| HICKORY FARMS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Tanisha Davis brings this employment discrimination action against her former employer, Hickory Farms. Defendant Hickory Farms moves for summary judgment on all of her claims. For the reasons stated below, Defendant's motion for summary judgment [82] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

1

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND[1]

Davis started working for Hickory Farms in October 2016. (DSOF ¶1). Davis was interviewed by Mary Lou Sarmiento and Nick Jager for a seasonal, temporary position, Corporate Sales Coordinator. (*Id.* ¶5). Davis reported to Sarmiento, who in turn reported to Todd Grohnke, Hickory Farms Senior Vice President of Wholesale and Corporate Sales. *Id.* Davis is African American. *Id.*

---

[1] The facts in this Background section are undisputed unless otherwise noted. Defendant's Rule 56.1 Statement of Facts (Dkt. 83) is abbreviated as "DSOF". Plaintiff's Rule 56.1 Statement of Facts (Dkt. 86) is "PSOF". Plaintiff responded to Defendant's Statement of Facts at Dkt. 86-1 and Defendant responded to Plaintiff's Statement of Facts at Dkt. 88.

On January 20, 2017, Davis was hired for a full-time position, Sales Coordinator, for which she reported to Jager (and Jager reported to Grohnke). (*Id*. ¶6).[2] Both of Davis's positions were part of Hickory Farms' Joliet, Illinois corporate sales team. *Id*. As Sales Coordinator, Davis was responsible for accepting tasks delegated by Sarmiento, the manager of the Joliet corporate sales team. (*Id*. ¶7). On March 24, 2017, Sarmiento emailed Jager about several deficiencies in Davis's performance. (*Id*. ¶8). Sarmiento identified Davis's lack of communication, particularly regarding one of Hickory Farms' largest clients, Davis's communication with Sarmiento, that Davis failed to grasp knowledge about her assignments, and her lack of participation and initiative in client service. (*Id*.). Sarmiento requested Jager's assistance with Davis's performance issues since he was Davis's direct supervisor. (*Id*.)[3]

In early 2017, Grohnke made a strategic business decision to split Hickory Farms' Joliet Corporate Sales Department into separate sales and operations teams. (*Id*. ¶33). Sarmiento would focus on sales, and Davis and Jager would focus on operations while supporting Sarmiento in sales. (*Id*.). Around June 2, 2017, Grohnke advised

---

[2] Although Davis's response (Dkt. 86-1) states "disputed", she only adds that she "held a third position, Full-Time Corporate Sales Account Manager but was not given the pay for the position." Thus she does not actually dispute the factual statements in DSOF ¶6. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014) (if plaintiff fails to respond in form required to movant's Local Rule 56.1 facts, court can accept those facts as undisputed). Moreover Davis does not explain how Hickory Farms' failure to pay her enough for the third position, even if true, relates to her hostile work environment or retaliation claims.

[3] Davis "disputed in part" this statement. (Dkt. 86-1 ¶8). Her response, citing other portions of the March 24th email, argues that "Sarmiento's perception [of Davis] was skewed." This is not an appropriate response. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (plaintiff's Rule 56.1 responsive statement containing legal argument and conjecture was not compliant with local rule).

Jager that he did not know if Davis was the right fit for that new role, "based on her ability to take direction from Mary Lou or Nick." (*Id*. ¶35; Grohnke Dep. (Dkt. 87), pp. 76-77). On June 23, 2017, Jager and Davis had a meeting. (DSOF ¶37). Hickory Farms characterizes this meeting as a coaching session while Davis argues it involved Jager merely yelling at and degrading her. (*Id*.; Dkt. 86-1 ¶37). Grohnke and Davis spoke after that meeting. (DSOF ¶38). Grohnke believed at that time that if Davis was not going to be receptive to coaching and was going to walk out of a meeting, "it [wa]s probably time to move to termination." (*Id*. ¶40; Grohnke Dep. p. 87). He also understood that Davis "felt like she was being treated unfairly by Nick and Mary Lou," though he did not inquire further, and directed Davis to report her complaint to Gina Flaig in Human Resources. (PSOF ¶21). Davis was never disciplined during her employment with Hickory Farms. (*Id*. ¶10).

On June 26, 2017, Grohnke, Flaig, and Jager met and determined that Davis's employment should be terminated, and prepared a plan to advise Davis of her termination and to implement administrative actions for termination, such as deactivating her security badge access. (DSOF ¶¶41, 42; *see also* PSOF ¶33). Davis and Flaig met on June 27, 2017. (DSOF ¶44). Davis was terminated that day. (Dkt. 86-1 ¶1).

In her amended complaint (Dkt. 16), Davis alleges hostile work environment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I) and under 42 U.S.C. § 1981 (Count II), and retaliation under Title VII and § 1981 (Count III).

**ANALYSIS**

## I. Hostile Work Environment Claim

"A hostile work environment claim contains four elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII—here, race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability." *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 560 (7th Cir. 2019).[4] "Whether harassment reaches this level depends on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Davidson v. State Collection Serv., Inc.*, 824 F. App'x 424, 426 (7th Cir. 2020) (cleaned up). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84, 141 L. Ed. 2d 662 (1998).

Hickory Farms argues that Davis fails to provide evidence of race-based harassment that was severe or pervasive enough to alter the conditions of her employment. Davis responds that she "has alleged numerous acts of harassment based on her race beginning roughly in February, 2017, and [] through to the end of her employment with Hickory Farms." (Dkt. 85 at 13). She contends she "testified

---

[4] "[T]he elements and methods of proof for § 1981 claims are 'essentially identical' to those under Title VII, so we need not analyze them separately." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (citation omitted).

about numerous documented and undocumented complaints of racially demeaning treatment" by Sarmiento and Jager. *Id*. Davis testified that she believed the way Sarmiento spoke to her was because Davis was Black:

> I believe that she spoke to me in that manner because she felt she had the right to. She felt that she was -- because she may have been manager or over me, that she had the right to demean me in any manner that she wanted to and bash me as if I was nothing, as if I was a piece of dirt underneath her foot. And I didn't agree with that.

(Davis Dep. (Dkt. 85-1), p. 64. Davis further testified that:

> [A]t Hickory Farms, I felt that it was like a slave plantation. I was told don't do this, don't do that, don't talk to this person, don't get involved with this. You are to work, work, work…I received the comment of being slandered, 'girl,' or as it was stated back in the day, 'gal.' That was a very disrespectful comment that was made by Nick Jager calling me a girl as in the old days they did disrespectfully to black women.

*Id.*, pp. 122-23. Davis also argues that Sarmiento spoke to her in a demeaning way about her ability to understand information at work, stating to Davis: "'no matter which way I say it, you won't get it anyway.'" *Id.*, p. 105.

Viewing the evidence in Davis's favor, the Court agrees that Sarmiento's and Jager's management approach created an unpleasant work environment for Davis. But Davis has failed to show that their comments were based on Davis's race. Generally employers "do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). *See also Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (summary judgment proper where plaintiff's complaints about supervisor's comments did not show a "workplace...permeated with discriminatory intimidation, ridicule, and insult.")

(citations omitted); *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) ("Perhaps [plaintiffs'] supervisors' criticisms were unfair…but there is no evidence that they were unfair *because they were motivated by race*, as Title VII forbids.") (emphasis in original).

In *Smith*, plaintiff's supervisors used a significant amount of profanity towards him in the workplace. 936 F.3d at 560. However the Seventh Circuit concluded that "the majority of the harassment he identifies was unconnected to his race." *Id.* "While the epithets may have made for a crude or unpleasant workplace," the Seventh Circuit explained, "[he] introduced no evidence that his supervisors swore at him because he was black." *Id.* at 560-61.

Here too, Davis does not identify any evidence that Sarmiento or Jager spoke to her in a demeaning manner because she is Black. *See Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 668 (N.D. Ill. 2016) (summary judgment granted to defendant on hostile work environment claim where plaintiff provided no evidence that superior's criticism of his work performance was related to his race). Davis asserts that Sarmiento did not speak to Caucasian employees the same way that she spoke to Davis. (PSOF ¶5). As Hickory Farms points out, however, Davis testified that she observed Sarmiento speak to only four other individuals, one of whom was not a Hickory Farms employee. (Dkt. 88 ¶2). As for one of the employees, Bloomquist, who is Caucasian, Davis observed her and Sarmiento "going back and forth with rude comments." *Id.*; Davis Dep. p. 66. In any event, Davis's subjective belief that Sarmiento and Jager spoke to her in the way they did because of her race is not

enough to survive summary judgment. *See Zegarra* 218 F. Supp. 3d at 667 (plaintiff must show work environment was both objectively and subjectively offensive); *see also Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011).

As in *Smith*, 936 F.3d 554, Davis has identified one incident of race-based harassment. In May 2017, during a meeting with Jager, Sarmiento, and Davis, Sarmiento, discussing news about Trump's plan to send the national guard into Chicago, commented that "Trump just needs to go in there and send his troops and kill them all." (DSOF ¶30; PSOF ¶3). Davis responded "wait a minute. People of my race, innocent children and families live in those communities." Sarmiento then stated "well Tanisha, something needs to happen. He just needs to go in there and kill them all.'" *Id*.[5] Jager did not speak up in response to Sarmiento. *Id*. Davis was so upset she had to excuse herself from the meeting. *Id*.

Although these statements by Sarmiento were reprehensible, to avoid summary judgment, Davis must show that the conditions of her employment were altered as a result. *See Smith,* 936 F.3d at 561 (showing must be made from both a subjective and objective point of view). She has not done so. Davis contends that the harassment she endured began in February 2017, several months before Sarmiento's wholly inappropriate comment about troops murdering citizens. (Davis Dep. p. 109, explaining that this meeting occurred after Memorial Day). But as discussed, Davis

---

[5] Surprisingly, Hickory Farms disputes that Sarmiento was referring to Black individuals in Chicago. (Dkt. 88 ¶3). Hickory Farms does not dispute that when Davis spoke up, objecting to Sarmiento's comments about "[p]eople of my race," Sarmiento replied that "well Tanisha, something needs to happen. He just needs to go in there and kill them all.'" Viewing the evidence in Davis's favor, the clear inference is that Sarmiento was talking about Black people.

has not shown that the harassment, other than this one May 2017 meeting, was based on her race. *See Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (plaintiff's complaints were of overwork, not an environment permeated by ridicule and insult based on plaintiff's race). Davis has not shown that the "harm from [the] race-based harassment [] was *distinct from* the distress that non-race-based harassment was already causing [her]." *Smith,* 936 F.3d at 561-62 (emphasis added).

Davis's own testimony belies her claim that the harassment altered the conditions of her employment. Testifying about her work environment, she stated "[i]t *does not change my work performance.* It causes me to maybe stress more, causes my environment to be hostile to where it could change the way I actually perform but not to the point of not being able to complete tasks." (Davis Dep. p. 43, emphasis added). In response to Hickory Farms' statement of facts, Davis again admitted that the environment "*could* change the way she actually performed but *not to the point of not being able to complete tasks.*" (Dkt. 86-1, ¶22, emphasis added).

Therefore a reasonable juror could not find that Davis endured harassment based on her race which altered the conditions of her employment. Summary judgment is granted in favor of Hickory Farms on Counts I and II.

## II. Retaliation Claim

"To survive summary judgment on his Title VII retaliation claim, [plaintiff] must show that a reasonable jury could find that he engaged in a protected activity, that he suffered an adverse employment action, and that the adverse action was motivated by a protected activity." *Smith*, 936 F.3d at 559–60. Hickory Farms does not dispute

that Davis suffered an adverse employment action. Hickory Farms argues, however, that Davis's "last-second" protected activity occurred after it had already made the decision to terminate her, and she cannot establish a causal link between the protected activity and her termination.

Davis argues that she raised complaints to Jager, Sarmiento and Grohnke. (Dkt. 85 at 8-10). But the evidence shows that she complained of unfair and overly critical treatment, not of prohibited discrimination. "A plaintiff must [] produce evidence of an adverse employment action that was instigated by her *complaining about prohibited discrimination.*" *Jaburek v. Foxx*, 813 F.3d 626, 633 (7th Cir. 2016) (emphasis added) (citation omitted). *See also Ferrill v. Oak Creek-Franklin Joint Sch. Dist.,* 860 F.3d 494, 501 (7th Cir. 2017) ("'Protected activity' is 'some step in opposition to a form of discrimination that the statute prohibits.'").

Davis asserts that she told Jager and Sarmiento that "their conduct was unwelcome" (PSOF ¶ 7), without identifying evidence that she complained about racial discrimination. Davis relies, for example, on a June 8, 2017 "written complaint" she made. (Dkt. 85 at 8, citing Dkt. 83, Exh. 15). In that June 8th email, in response to a work request by Sarmiento, Davis asked Sarmiento to "stop speaking to me as if I have no understanding of things," and noted the "negative comments I have been constantly receiving from you without cause." (Dkt. 83, Exh. 15). But that email did not complain of racial discrimination. Similarly Davis does not point to any evidence that she told Grohnke she was being subjected to discrimination because of her race. Davis testified that she told Grohnke that Jager was "bashing [her]", told her she

could not spell, and called her "girl." (Davis Dep. p. 147). Grohnke similarly testified that Davis complained of unfair treatment during their June 23rd discussion:

> I had a discussion with Tanisha about coaching opportunities and that we can't get up and walk out of a meeting while we are trying to coach. And I said if there is specific concerns about being treated unfairly, I think we need to have a meeting with Gina and discuss that with a third party, being the HR director.

(Grohnke Dep. p. 106).

Davis argues that she reported to Jager that Sarmiento made "racial comments" (PSOF ¶ 39) and she testified that she complained to Grohnke about "harassment, the intimidation, the racial comments." (Davis Dep. p. 184). However other than the Sarmiento's comments about troops during the May 2017 meeting, Davis does not point to any specific examples of racial comments that were directed at her or that she reported. Even accepting her assertion that she complained about racial discrimination, Davis has failed to "offer evidence that would allow the factfinder to conclude that the employer took the adverse action *because of* the protected activity." *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 808 (7th Cir. 2020) (emphasis added) (citation omitted). In *Ferrill*, the Seventh Circuit afforded plaintiff the "generous assumption" that a "highly generalized" complaint constituted protected activity. 860 F.3d at 501. Plaintiff's retaliation claim still failed "for lack of evidence of causation." *Id.* Similarly here, Davis has failed to offer evidence "that the desire to retaliate was the but-for cause of" her termination. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013). "This requires proof

that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 360.

Documented communications among Jager, Sarmiento and Grohnke, as well as Grohnke's testimony, show that Davis was not meeting expectations at work. Grohnke testified that after the structural change at Hickory Farms, he did not "know if Tanisha was the right fit for [her new role]…[b]ased on her ability to take direction from Mary Lou or Nick," and Davis needed "some coaching." (Grohnke Dep. p. 77). In March 2017, Sarmiento alerted Jager to a number of deficiencies in Davis's performance. (DSOF ¶8). Sarmiento also emailed Grohnke about concerns with Davis's work in May 2017. (Dkt. 83-1, Exh. 13). Grohnke responded that Jager was working on a plan "to address these kinds of issues and evaluate if [Davis] is making progress." *Id*. By the time Grohnke met with Davis on June 23rd, he was at the point of believing that "it [wa]s probably time to move to termination." (Grohnke Dep. p. 87). Accordingly, given this evidence that Davis "was not meeting [her] employer's legitimate expectations, a reasonable jury could not find that the [employer] fired [her] because of [her] protected activity rather than for [her] poor performance." *Smith*, 936 F.3d at 560.

Davis contends Hickory Farms did not discipline her or notify her that she was underperforming. There is evidence of Davis's supervisors notifying her of issues with her work performance. (Dkt. 83-1, Exhs. 9, 13, 15). Even so, Davis's argument does not defeat summary judgment. As the Seventh Circuit explained in *Fane v. Locke Reynolds, LLP*, "[w]hether Fane had notice of her transgressions, whether

termination was an extreme response to them, and whether Locke Reynolds followed its own progressive disciplinary procedures are irrelevant to the issue of whether Fane was meeting the firm's legitimate expectations." 480 F.3d 534, 540 (7th Cir. 2007). *See also Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) ("judgments regarding the fairness of a particular action or the accuracy of an employer's belief about an employee's job performance [are not relevant]…[t]he only question that matters is whether [employer] actually believed it had a legitimate basis to terminate [plaintiff]."); *King v. Ford Motor Co.,* 872 F.3d 833, 842 (7th Cir. 2017) ("our concern is not whether [employer's] decision to fire [plaintiff] was correct, but whether it was retaliatory").

Finally, while Davis testified that she complained to Flaig of racial discrimination on June 27, 2017, before their meeting that day, Hickory Farms already had a plan to terminate Davis. (DSOF ¶42).[6] "Employers need not suspend previously planned [employment actions] upon discovering that [a Title VII] suit has been filed, and their proceeding along lines previously contemplated...is no evidence whatever of causality." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 811 (7th Cir. 2005) (citation and quotations omitted). In *Harris v. City of Chicago*, for example, the court concluded that the chain of events leading to the termination decision already was in

---

[6] Davis characterizes the June 26th decision to terminate her as Grohnke approving her termination depending on whether she complained about racial discrimination to Flaig. (PSOF ¶ 34; Dkt. 85 at 11). However the only evidence Davis relies on for support is Flaig's deposition in which Flaig testified that Grohnke would give final approval for termination depending on what Davis shared at the meeting between Davis and Flaig. (Flaig Dep. (Dkt. 85-3) at pp. 75-77). But nothing in Flaig's cited testimony gives rise to the inference that the termination decision would depend on whether Davis complained about racial discrimination.

motion when plaintiff filed his complaints, so the fact that the "decision followed Plaintiff's complaints in time does not support an inference of a causal connection between the two." 665 F. Supp. 2d 935, 950 (N.D. Ill. 2009).

Davis has not raised a genuine issue of fact that Hickory Farms retaliated against her for complaining about racial discrimination. Summary judgment is granted in favor of Hickory Farms on Count III.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [82] granted. The Clerk is directed to enter judgment in Defendant Hickory Farm's favor and against Plaintiff Tanisha Davis and terminate the case.

E N T E R:

Dated: June 23, 2021

_____
MARY M. ROWLAND
United States District Judge

14